IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CLAYTON EUGENE YOUNG, #330828   * | |
|     Plaintiff, | |
| v.    * | CIVIL ACTION NO. RWT-06-2103 |
| CORRECTIONAL MEDICAL SERVICES  * | |
| WARDEN GREEN | |
|     Defendants.  * | |
|     *** | |

**MEMORANDUM OPINION**

II.   PROCEDURAL HISTORY

Plaintiff filed this 42 U.S.C. § 1983 civil rights complaint for injunctive relief and unspecified damages,[1] dated August 1, 2006, complaining that while confined at the Eastern Correctional Institution ("ECI"): (1) he is being denied a physician-ordered mattress for an injury to his spine; (2) he is required to wear a neck brace, but has not been provided a replacement cervical collar requested on July 5, 2006; and (3) he was prescribed Valtrex for genital herpes when received into the Division of Correction ("DOC") and has had difficultly receiving refills for the medication.[2]  (Paper No. 1).

In December of 2006, Defendants Correctional Medical Services, Inc. ("CMS") and Green filed Motions to Dismiss or for Summary Judgment, which shall be treated as summary judgment motions. (Paper Nos. 22 & 24).  Plaintiff has filed Oppositions thereto.[3]  (Paper Nos. 26, 27, 29, &

---

[1]   In his Opposition Plaintiff asks for $3,000,000.00 in damages.

[2]   Plaintiff claims that after numerous sick-call requests from December 22, 2005, to January 17, 2006, he was initially denied Valtrex by Dr. Jamila on January 10, 2006, but received a refill on February 28, 2006.  (Paper No. 1).  He further claims that on June 28, 2006, he requested a prescription refill and was denied the request even though he had an outbreak of herpes in July of 2006.  (Id.).

[3]   Plaintiff has filed a Motion for Final Judgment, arguing that his case is meritorious and that state documents have been altered in an effort to misrepresent the facts of this case.  (Paper No. 28).  The

30). In addition, Plaintiff has filed a Motion for Final Judgment, Motions for Leave to File Amended Complaints, and a Motion for Preliminary Injunction and Temporary Restraining Order. (Paper Nos. 28, 31, 32, 33, & 35). The matter is ready for this Court's consideration. The undersigned concludes that an oral hearing is unnecessary. See Local Rule 105.6 (D. Md. 2004).

II.   NON-DISPOSITIVE MOTIONS

Plaintiff has filed a Motion for Preliminary Injunction and Temporary Restraining Order. (Paper Nos. 33 & 35). He claims that the injury from his February, 2006 fall is worsening and he has only received a neck brace (cervical collar), Advil, and muscle rub. (Paper No. 33). He asks to be sent to a neurologist or orthopedic surgeon for evaluation of the condition of his neck at the C-3 and C-4 discs. (Id.).

Plaintiff's Motion shall be denied. His claims with respect to his request for injunctive relief are, essentially, wrapped up in his Complaint. Therefore, his civil rights action will provide him adequate redress for those claims. The requested emergency order goes to an equitable remedy. Such a remedy will not be given when Plaintiff has a forum for his complaint. See generally 11 C. Wright & A. Miller, § 2944.

III.   STANDARD OF REVIEW

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. See Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). Such a motion ought not to be granted unless "it appears beyond doubt that the

---

Motion shall be denied. The factual and legal arguments concerning Plaintiff's Eighth Amendment claim shall be addressed on the merits of the records and affidavits presented to the Court by the parties.

2

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The court, however, need not accept unsupported legal conclusions or pleaded facts, or conclusory factual allegations devoid of any reference to particular acts or practices. See Revene v. Charles County Comm'rs, 882 F.2d 870, 873 (4th Cir. 1989); United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Additionally, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his case as to which he would have the burden of proof. See Celotex, 477 U.S. at 322-323. Therefore, on those issues for which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

IV.   DISCUSSION

**1. Facts**

In his Opposition, Plaintiff states that as of December, 2006, he has been incarcerated in the DOC for thirteen months. Plaintiff first complained of back pain between the shoulder blades and numbness of the left arm in a sick-call request dated March 3, 2006.[4] (Paper No. 22, Exs. A & B). On March 7, 2006, he was evaluated the by Nurse Jill DeCeasare, who noted that Plaintiff was able

---

[4] Plaintiff states that the injury arose from a fall when he slipped on a AA battery, not when he bent over to pick up an object as noted by a prison nurse in a sick-call encounter form. (Paper No. 26).

3

to fully rotate his neck but complained of pain upon palpation of his cervical spine. (Id.). Plaintiff's pulses were normal and he had no pressure in his chest. DeCeasare ordered ibuprofen, moist heat, and analgesic balm to alleviate Plaintiff's complaints of pain. (Id.). On March 8, 2006, Dr. Pabla examined Plaintiff for complaints of pain and left arm numbness upon sitting and found a full range of motion ("ROM") of both arms and good reflexes. (Id.). Dr. Pabla could not reproduce Plaintiff's pain by palpating the alleged painful area. That same date Physician's Assistant ("P.A.") Kevin Johnson renewed Plaintiff's ibuprofen for pain and ordered an electrocardiogram ("EKG") to ensure that Plaintiff's complaints of left arm pain and numbness were not cardiac-related. (Id.).

Plaintiff was again evaluated by Dr. Pabla on March 13, 2006. Plaintiff was asymptomatic for chest pain or shortness of breath. A repeat EKG was ordered, along with cervical spine x-rays, and Plaintiff was scheduled for physician sick-call after completing the tests. (Id.). X-rays taken of Plaintiff's cervical spine on March 27, 2006, showed a straightening of the normal cervical curve, small anterior bone spurs, and possible posterior bone spurs. (Id.). The radiologist recommended the taking of additional oblique views of Plaintiff's cervical spine. (Id.)

From March, 2006, to May, 2006, Plaintiff continued to complain of pain in his neck and back. On March 28, 2006, he presented complaints of pain and claimed that due to the pain he had to decrease the number of bench presses he was performing. (Id.). He was given Advil and Motrin for his pain and advised to stop doing bench presses. (Paper No. 22, Exs. A & B). In April of 2006, additional cervical x-rays were ordered. The x-rays, taken on May 12, 2006, showed moderate narrowing of the space between Plaintiff's third and fourth cervical vertebrae with bone spurs. (Paper No. 22, Exs. A & B). Based upon Dr. Pabla's evaluation six days later, a cervical collar and mattress was ordered for Plaintiff. (Id.) Dr. Pabla's order for a special medical mattress was

subsequently rescinded upon information that the Department of Public Safety and Correctional Services does not provide such mattresses to inmates.[5] (Id.). To alleviate Plaintiff's pain, P.A. Johnson ordered that Plaintiff be indefinitely excused from work, gym, and weight lifting. (Id.).

On July 6, 2006, Plaintiff filed a sick-call request for a new surgical collar. (Id.). Dr. Pabla evaluated Plaintiff on July 13, 2006, and ordered a new surgical collar from an off-site vendor. The collar or neck brace was received by Plaintiff on September 20, 2006. (Id.)  Between September 25, 2006, and October 22, 2006, Dr. Pabla increased Plaintiff's pain-control regimen of Motrin from 400 mg. to 600 mg. three times a day for his complains of neck pain and headaches. (Id.).

CMS acknowledges that Plaintiff has a history of genital herpes. The record shows that when Plaintiff was received in the DOC this history was noted, along with the fact that Plaintiff was receiving the medication Valtrex.[6] (Paper No. 26, Ex. C). On October 12, 2005, Valtrex was prescribed by a physician at the Maryland Reception Diagnostic and Classification Center. (Paper No. 26, Ex. C). CMS admits that Plaintiff has been prescribed and has used Valtrex, an antiviral medication, to suppress potential herpes outbreaks. (Paper No. 22, Exs. A & B).  Valtrex is not in the CMS medication formulary and if ordered by medical personnel, approval must be obtained from the CMS Regional Director so that the Valtrex may be ordered from an outside vendor. (Id.).

---

[5] In supplemental opposition material, Plaintiff seemingly raises an equal protection claim, arguing that other inmates have received corrective surgery, prescribed medications, and an extra mattress. (Paper No. 29).

[6] The Food and Drug Administration ("FDA") approved Valtrex in 1995 pursuant to a New Drug Application. The FDA directed that "patients should be instructed that treatment for cold sores should not exceed 1 day (2 doses)." With respect to genital herpes , the FDA approved a recommended dosage of "500 mg twice daily for 3 days" for the treatment of recurrent episodes and "1 gram twice daily for 10 days" for the treatment of initial episodes. See Merix Pharmaceutical Corp. v. GlaxoSmithKline Consumer Healthcare, L.P., 2006 WL 1843370 (N.D. Ill. 2006).

In January of 2006, Plaintiff submitted sick-call requests indicating that he had not received his "prescriptions" (Paper No. 26). The prescription for Valtrex was ordered by Dr. Pabla for four months on February 23, 2006. (Paper No. 22, Ex. B). In June and July, 2006, Plaintiff submitted four sick-call requests indicating that he had not received Valtrex during July of 2006. (Id., Exs. A & B; Paper No. 26). Valtrex had in fact been re-ordered for four months on June 28, 2006. (Paper No. 22, Exs. A & B). In response to those sick-call requests, medical staff appear to have noted the non-formulary order and referred Plaintiff to sick-call. (Id.) In September of 2006, Plaintiff's sick-call request again noted that he was not getting his "prescriptions."[7] (Paper No. 26). Plaintiff states that he filed sick-call requests in October of 2006, noting that he had not received Valtrex. (Id.). CMS admits that the June, 2006 non-formulary renewal request was not sent to the Regional Director and that this error was not discovered until November 9, 2006. (Paper No. 22, Exs. A & B). A request to obtain approval was immediately sent to the Regional Director, approved, and Plaintiff received 30 tablets of Valtrex on November 13, 2006. (Id). CMS states that despite not having been issued additional Valtrex from July to November of 2006, Plaintiff never complained or presented any symptoms of a herpes outbreak during that time period.[8]

**2. Legal Analysis**

    i.   **CMS**

---

[7] In light of other September, 2006 sick-call requests, it is not clear whether Plaintiff is referring to his Valtrex and/or ibuprofen prescriptions. (Paper No. 26).

[8] In his Opposition attachment or "diary" entries, Plaintiff mentions that he had an outbreak on July 5, 2006, and notes that he still has the outbreak on July 11, 2006. (Paper No. 26). A diary entry of September 7, 2006, noted that his problems with outbreaks are "worse." (Id.). He further claims that he was forced to "live months on end with open wounds." (Paper No. 27).

Based on the facts presented, Defendant CMS moves this Court to dismiss the complaint filed by the Plaintiff, or in the alternative, grant summary judgment, on two grounds. First, CMS argues that it cannot be held liable based on the principles of vicarious liability, otherwise known as the doctrine of <u>respondeat superior</u>.  Second, CMS asserts that Plaintiff was provided constitutionally adequate medical care.

To the extent the Complaint attempts to implicate CMS in the alleged denial of medical care solely upon vicarious liability, the law in this circuit is clear.  The doctrine of respondeat superior does not apply to § 1983 claims.  <u>See</u> <u>Austin v. Paramount Parks, Inc.</u>, 195 F.3d 715, 727-28 (4th Cir. 1999); <u>Powell v. Shopco Laurel Co.</u>, 678 F.2d 504, 506 (4th Cir. 1982).

As to CMS's second ground, based upon the pleadings filed before the Court, the undersigned concludes that no Eighth Amendment violation has been demonstrated.  A prisoner presenting a denial of medical care claim must prove two essential elements.  First, he must satisfy the "objective" element by illustrating a serious medical condition.  <u>See</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992); <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976); <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995); <u>Johnson v. Quinones</u>, 145 F.3d 164, 167 (4th Cir. 1998).  If this first element is satisfied, the prisoner must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in <u>Estelle</u>, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994).  Medical personnel "must both be

7

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." Id. at 837. Health care staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844; see also Johnson v. Quinones, 145 F.3d at 167. Mere malpractice or negligence does not violate the Eighth Amendment. See Estelle, 429 U.S. at 106; Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990).

Under these legal standards, Plaintiff has failed to demonstrate that the medical treatment provided for injuries from his fall and the delays in providing him Valtrex was deliberately indifferent and caused him serious injury under the Constitutional standard announced in Estelle. 429 U.S. at 102-105. With regard to his neck injury, Plaintiff has made various complaints related to shoulder, neck, and back pain and arm numbness. Assuming these claims rise to the level of serious injury under Estelle and its progeny, Plaintiff's complaint fails to prove a violation of the second prong of Estelle, as the health care staff did not act with "deliberate indifference" toward Plaintiff. The record shows that Plaintiff was examined by a prison nurse for his initial complaints of pain in the shoulder and numbness of the left arm. He was provided anti-inflammatory non-steroidal medication, moist heat, and analgesic balm. Thereafter, Plaintiff was examined by the on-site physician, who found a full ROM and good reflexes. In addition, Plaintiff was medically unassigned for work, gym, and weight lifting. EKGs were conducted to rule out a cardiac-related event and two sets of cervical x-rays were taken, which revealed a moderate narrowing of Plaintiff's cervical vertebrae. Plaintiff was provided a cervical collar and continued to be provided anti-inflammatory medication and seen by health care staff as needed. Plainly, the complaints regarding Plaintiff's back, shoulder, and arm were not ignored by medical personnel.

8

There is no dispute that Plaintiff has a history of genital herpes and was prescribed the medication Valtrex for suppression and treatment of the disease.[9] It also remains uncontroverted that Valtrex is a non-CMS-formulary drug that must be approved for receipt by the medical director. For whatever reason, Plaintiff did not receive the Valtrex during January and February of 2006, although he submitted sick-call requests stating that he had not received a refill of his "prescription." Plaintiff does not, however, indicate that he experienced an injury from the delay in receiving the medication, see Jackson v. Fauver, 334 F.Supp.2d 697,730 (D. N.J. 2004) (delay in receipt of medication, in the absence of demonstrating injury to health, fails to support Eighth Amendment claim), and that he informed medical staff that outbreaks had occurred. It likewise remains unrefuted that a Valtrex re-fill prescription was written on June 23, 2006, as Plaintiff's four-month prescription was expiring. Plaintiff did not, however, receive a renewal of the medication until November, 2006, and health care staff readily admit that someone dropped the ball, explaining that the June 23, 2006 Valtrex order was never forwarded to the medical director for approval. The court finds this unconscionable, and, if indicative of a pattern or practice, unacceptable. Plaintiff was not silent during this five month period. He submitted sick-call requests in June and July, 2006, stating that he had not received the Valtrex. In response, medical staff informed him that it had been ordered. In addition, in September and October of 2006, he again complained that he had not received his prescriptions. Moreover, he tells this Court by complaint and exhibits (diary) that he had an outbreak of herpes in early July, that the outbreaks were worse in September, 2006, and that

---

[9] The symptoms for a genital herpes infection can vary, from several outbreaks each year to only a few outbreaks over the course of a lifetime. Outbreaks may involve mild symptoms such as itching and redness or more severe ones such as painful burning and sores. Although there is no cure for herpes, it may be treated with antiviral medications that relieve the pain and discomfort of the disease's symptoms, shorten the duration of the infection and reduce new lesion formation and viral shedding. See Cherry v. Berge, 2003 WL 23095796 (W.D. Wis. 2003).

he was forced to live with open wounds.  Unfortunately for Plaintiff, health care personnel make a cogent argument for judgment:  Plaintiff has failed to refute the Defendant's exhibits by affidavit or other to show that he communicated or presented any manifestations or symptoms of an outbreak to medical staff during this five-month period.  He thus fails to satisfy the subjective component of the <u>Farmer</u> standard.   Therefore, the Court concludes that the delay, while tantamount to negligence, does not amount to an act or omission "for the very purpose of causing harm or with knowledge that harm will result."  <u>Farmer</u>, 511 U.S. at 835.  A constitutional deprivation has not been proved.[10]

### ii.  Warden Green

Warden Green asserts that dismissal of the complaint against her is appropriate in that:  (1) Plaintiff has failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997e(a); (2) she cannot be held liable for the actions of the medical staff; and (3) Plaintiff has received constitutionally appropriate medical care.  (Paper No. 24).  Plaintiff claims that Green is named as a "disclosed principal, agent of the State of Maryland," who is ultimately responsible for his care as the "overseer" of CMS.  (Paper No. 27).  He further accuses Warden Green of altering an administrative remedy receipt document by inserting date entries.  (Paper No. 27).  Plaintiff additionally claims that the administrative remedy process is a "broken, non-functioning, useless instrument" and any non-exhaustion argument is "moot."  (<u>Id</u>.).

In his Opposition, Plaintiff for the first time directly seeks to hold Warden Green liable for a number of alleged poor conditions of confinement.  (<u>Id</u>.)  He cites to trash and water on the floor

---

[10]     In his second Motion for Leave to File Amended Complaint, submitted after responsive pleadings had been filed, Plaintiff seeks to add the names of Medical Director Tonya Sample, Dr. Gurewa Pabla, and Dr. Jamila as medical defendants.  (Paper No. 32).  In light of the Eighth Amendment findings of this Court, the Motion shall be denied.

and unsanitary restrooms and claims that he is at serious risk of infection. (Id.) Plaintiff seemingly states that Warden Green is responsible for his alleged herpes outbreaks and for his falling on the discarded battery in February of 2006. (Id.).

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 126 S.Ct. 2378, 2385-86 (2006). Exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s). See Jones v. Bock, 127 S.Ct. 910, 919-22 (2007); Anderson v. XYZ Correctional Health Services, Inc., 407 F.2d 674, 682 (4th Cir. 2005).

Defendant Green argues, through the affidavit of ECI Litigation Coordinator Michael Miller, that this case should be dismissed for Plaintiff's failure to exhaust administrative remedies. This Complaint falls under the exhaustion prerequisites of § 1997e(a), and Plaintiff's claims must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement or that Defendant has forfeited her right to raise non-exhaustion as a defense. See Chase v. Peay, 286

F.Supp.2d 523, 528 (D. Md. 2003), aff'd, 98 Fed. Appx. 253 (4th Cir. June 2, 2004) (per curiam).[11] The record shows that Plaintiff filed two administrative remedies regarding his medical care. (Paper No. 24, Exs. 1-3). The first remedy, concerning the failure to receive Valtrex, was filed on or about January 6, 2006, and was voluntarily withdrawn three days later. (Id.). On or about January 17, 2006, however, Plaintiff re-filed the remedy, which was found to be without merit on March 22, 2006.

Plaintiff claims that the administrative remedy process is a travesty. He further states that he has demonstrated exhaustion. The requirement for exhaustion of administrative remedies can be either statutorily or judicially imposed. Statutory exhaustion requirements are mandatory, while the judicial, or common-law, exhaustion doctrine is discretionary and includes a number of exceptions. See Beharry v. Ashcroft, 329 F.3d 51, 56-57 (2d Cir. 2003). In Booth v. Churner, 532 U.S. 731 (2001) the Supreme Court expressly found that Congress had statutorily mandated exhaustion under 42 U.S.C. § 1997e(a) and "we will not read futility or other exceptions into statutory exhaustion requirements . . . ." Id. at 741.

Plaintiff points to a number of documents in support of his exhaustion argument. (Paper No. 26, Ex. E). These documents show, however, that in August and September of 2006, Plaintiff attempted to file claims with the State Treasurer regarding his slip and fall injury, and was told to file a grievance with the Inmate Grievance Office ("IGO"). (Id.). No documents have been presented showing that he presented any remedy to the IGO and that the remedy was decided

---

[11] Under Chase, a Maryland inmate may satisfy exhaustion by seeking review of an Administrative Remedy Procedure ("ARP") complaint denial from the Warden to the Commissioner and then appealing the Commissioner's decision to the Inmate Grievance Office ("IGO"), the *final level* of appeal within Maryland's administrative grievance system for prisoners. See Chase v. Peay, 286 F.Supp.2d 523, 529 (emphasis added).

pursuant to the IGO process. Plaintiff has failed to adequately refute Defendant Green's affirmative defense of non-exhaustion.

Further, even if exhaustion could be demonstrated, Plaintiff has failed to establish liability of the part of Warden Green. Undoubtedly, he has failed to allege, much less show, personal involvement on the part of the Warden. In general, supervisory liability may be established by showing the supervisor's: (1) actual or constructive knowledge that subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) inadequate response to that knowledge, demonstrating deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) inaction is causally linked to the particular constitutional injury. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Section 1983 liability on the part of Warden Green with regard to Plaintiff's medical care requires a showing that Green: (1) failed promptly to provide Plaintiff with needed medical care, (2) deliberately interfered with the prison doctors' performance, or (3) tacitly authorized or was indifferent to the prison physicians' constitutional violations. See Miltier v. Beorn, 896 F. 2d at 854. Plaintiff has not made the requisite showing. There is no demonstration that Green interfered with Plaintiff's medical care.[12] More importantly, as this Court has determined that prison medical staff did not violate Plaintiff's constitutional rights, Plaintiff cannot satisfy a fundamental element of the Miltier standard.[13]

V.     Conclusion

---

[12] As to Plaintiff's eleventh hour conditions of confinement claims, the Court finds that Plaintiff's allegations do not meet the Eighth Amendment standard under Shaw.

[13] Given this Court's finding, Plaintiff's Motion for Leave to Amend (Paper No. 31) shall be denied.

For the aforementioned reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is hereby granted. Judgment is entered in favor of Defendants and against Plaintiff. A separate Order shall follow.[14]


Date: 3/22/07                                                             /s/
                                                            ROGER W. TITUS
                                                            UNITED STATES DISTRICT JUDGE

---

[14] Defendant CMS shall, however, be required to file a status report with regard to Plaintiff's medications and cervical care.